UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI JEAN PARKS, | Case No. 16-cv-04061-HSG |
| Plaintiff, | **ORDER GRANTING IN PART MOTIONS TO DISMISS** |
| v. | Re: Dkt. Nos. 13, 18 |
| PORT OF OAKLAND, et al., | |
| Defendants. | |

Pending before this Court are two motions to dismiss the first amended complaint, filed by Defendants the Port of Oakland, Dkt. No. 13, and the City of Oakland, Dkt. No. 18. For the reasons detailed below, the Court GRANTS the City of Oakland's motion and GRANTS the Port of Oakland's motion in part.

**I. BACKGROUND**

Pro se Plaintiff Sherri Jean Parks has been a plumber with the Port of Oakland for approximately twelve years. Dkt. No. 5 ¶¶ 6, 18 ("FAC"). Her job responsibilities include "installing, maintaining, and repairing water, sewer, and gas piping for buildings and grounds at the harbor." *Id.* ¶ 6. She also reads and organizes blueprints, creates rough drawings, maintains, cleans, and stocks the plumbing shop, reads water meters, and tests eyewash stations. *Id.* According to Plaintiff, she "was able to and did perform [her] job satisfactorily" and "took on leadership roles and received good and outstanding in areas on evaluations." *Id.* ¶ 9.

As part of her employment, Plaintiff alleges that she was required to become a certified backflow assembly tester in the Spring of 2003. *Id.* ¶ 12. "When similarly situated males received their certification they were offered a 6% pay increase." *Id.* Although Plaintiff "obtained [her] certification," she "never received [a] similar offer or increase." *Id.* Plaintiff alleges that the

sole reason she did not receive this increase is because she is a woman. *Id.* ¶¶ 10–11, 14–15. When she complained, she was threatened with termination. *Id.* ¶¶ 12, 16.

Plaintiff further alleges that in the Spring of 2013, she was scheduled for surgery for a torn rotator cuff. *See id.* ¶¶ 17, 19. At her supervisor's urging, she requested one shift off a week until her surgery to accommodate her medical appointments. *Id.* ¶ 26. She corroborated her request with a doctor's note. *Id.* Once she did so, her employer refused to allow her to continue working before her surgery. *Id.* ¶¶ 21–22, 26. She was later told that her medical appointments had "made scheduling her impossible," although she always received prior approval. *Id.* ¶ 22. Plaintiff further alleges that another employee with medical appointments was still allowed to work leading up to his surgery even though she was not. *Id.*

The Port hired a temporary plumber during Plaintiff's absence. *Id.* ¶ 26. When she was ready to return to work, the Port delayed discussing reasonable work accommodations with her. *Id.* ¶ 31. When they finally met with her in January 2014, they would not explore "even minimal accommodation" and were concerned about their own liability if she returned. *Id.*

In response, Plaintiff filed this employment discrimination action on July 19, 2016. Dkt. No. 1. She later amended her complaint on October 14, 2016, to assert claims for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Equal Pay Act. *See* Dkt. No. 5.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court may dismiss a complaint when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 556; *Erickson v. Pardus*, 551 U.S.

89, 93–94 (2007). However, the Court is not required to accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). Nor is it required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## III. ANALYSIS

Plaintiff brings this case against both the City of Oakland ("City") and the Port of Oakland ("Port"). The Court addresses each Defendant in turn.

### A. City of Oakland

The City contends that it is not a proper defendant in this case because Plaintiff is employed by the Port and not the City. *See* Dkt. No. 18 at 5–7. The City relies on the Oakland charter in support of its motion to dismiss.

Cities in California may create and regulate subgovernments within themselves. *See* Cal. Const. art. XI, § 5(a)–(b). Pursuant to this grant of power, the City established the "Port Department." Dkt. No. 18-1, Ex. A § 700.[1] The Board of Port Commissioners, in turn, has "exclusive control and management of the Port Department." *Id.* §§ 701. 706. As part of its duties "for and on behalf of the City," the Board of Port Commissioners shall "sue and defend *in the name of the City* in all actions and proceedings wherein there is involved any matters within the jurisdiction of the Board." *Id.* § 706(1) (emphasis added); *see also City of Oakland v. Hogan*, 41 Cal. App. 2d 333, 341–45 (1940) ("The Port Commission is a legal entity, created by charter and empowered, by approval of the state legislature, to act as an agency of the municipality."). Moreover, the "Port Attorney" shall "defend and . . . prosecute or compromise all actions at law or in equity and special proceedings for or against the City or any officers thereof in his official capacity, pertaining to matters within the jurisdiction of the Board." Dkt. No. 18-1, Ex. A

---

[1] Plaintiff does not challenge the City of Oakland's request for judicial notice, Dkt. No. 18-1, which includes the City of Oakland Charter. Because no party objects to the Court taking judicial notice of the existence of this document, the Court GRANTS the request for judicial notice. *See* Fed. R. Evid. 201(b).

3

§ 706(20). The Board's duties include controlling and supervising the Port and "entering into contracts germane to the scope of its powers and duties." *Id.* §§ 706(2)–(4), (14), (17). It may "exercise on behalf of the City all the rights, powers and duties" regarding the Port of Oakland. *Id.* § 706(29).

That the Port is a separate department within the City does not render the City immune from suit. Rather, to the extent that the City is sued for a matter within the Port's jurisdiction, the Port shall defend the City on its behalf. Dkt. No. 18-1, Ex. A §§ 706(1), (20); *cf. City of Oakland*, 41 Cal. App. 2d at 337 (noting the action was "instituted by the City of Oakland, a municipal corporation, by and through its Board of Port Commissioners."). Plaintiff's claims against the City are identical to her claims against the Port and fall within the Port's jurisdiction. The Port may, therefore, defend the City against Plaintiff's claims. *Cf. Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2014 WL 7206581, at *4 (N.D. Cal. Dec. 18, 2014) (finding that municipal departments "cannot be held liable for damages separate from the [City of Oakland].").

Accordingly, the City's motion to dismiss is GRANTED. If Plaintiff has distinct grievances against the City that do not arise from her employment with the Port, she may explicitly describe them in an amended complaint. The Court cautions that Plaintiff should differentiate between conduct by the City and conduct by the Port instead of referring generically to "the" or "a" Defendant.

### B. Port of Oakland

#### i. Exhaustion

The Port argues that Plaintiff's Title VII and Equal Pay Act claims should be dismissed because Plaintiff has failed to exhaust her remedies under the "Memorandum of Understanding" between the Port and the Union ("MOU") before filing this action.[2]

"It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such

---

[2] Plaintiff does not challenge the Port of Oakland's request for judicial notice, Dkt. No. 17, which includes the Memoranda of Understanding between the Port and union for 2013 through the present. Because no party objects to the Court taking judicial notice of the existence of these documents, the Court GRANTS the request for judicial notice. *See* Fed. R. Evid. 201(b).

4

1  contract must exhaust these internal remedies before resorting to the courts in the absence of facts
2  which would excuse him from pursuing such remedies." *Serv. Employees Int'l Union, Local 1000*
3  *(CSEA) v. Dep't of Pers. Admin.*, 142 Cal. App. 4th 866, 869–70 (Cal. Ct. App. 2006) (quotation
4  omitted). Animating this rule is a desire to promote judicial economy by mitigating damages,
5  taking advantage of the administrative agency's own expertise, and providing an evidentiary
6  record in the event of judicial review. *Campbell v. Regents of Univ. of California*, 35 Cal. 4th
7  311, 322 (Cal. 2005).

Nevertheless, "if the claim arises from *statutory* rights, the plaintiff is not required to exhaust agreement remedies." *Collins v. Lobdell*, 188 F.3d 1124, 1127 (9th Cir. 1999) (emphasis added). "[E]xhaustion . . . is not required even where a claim based on statutory rights also presents a claim under the agreement." *Id.*; *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 50 (1974) ("The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.").

The Port argues that Plaintiff's Title VII and Equal Pay Act claims are about Plaintiff's compensation, and thus "fall[] squarely within the MOU." Dkt. No. 13 at 8. Under the MOU, the established grievance procedure is limited to "a dispute which involves the interpretation or application of this Agreement, the applicable personnel rules of the Port and/or disciplinary action taken." Dkt. No. 17-2, Exs. B, C § 5.A. It does not require union members to follow the grievance procedure for statutory claims. *Cf. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009) (enforcing collective bargaining agreement that "clearly and unmistakably requires respondents to arbitrate the age-discrimination claims"); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) ("[T]he right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.").

Here, Plaintiff clearly alleges violations of both Title VII and the Equal Pay Act. Not only does she identify Title VII and the Equal Pay Act by name, but in her complaint she also states that "Defendant refused to offer or pay a 6% additional pay increase as similarly situated males" because she "[is] a woman." *See* FAC ¶¶ 10–11, 14–15. She does not suggest that these actions violated the MOU at all. *See Collins*, 188 F.3d at 1127. That Plaintiff may have also raised her

concerns through the grievance procedure does not preclude her from bringing a case in federal court for these statutory claims. *Id.* The Court DENIES the Port's motion to dismiss these claims.

### ii. ADA

The Port next argues that Plaintiff's ADA claims for disparate treatment and failure to provide reasonable accommodation should be dismissed because she failed to allege a legally cognizable disability.

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). To state a claim, Plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). An individual has a "disability" under the APA if she has "a physical or mental impairment that substantially limits one or more major life activities" or if her employer believes she has such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1)(i)–(iii). "Whether a person is disabled under the ADA is an 'individualized inquiry.'" *Thornton v. McClatchy Newspapers, Inc.*, 261 F3d 789, 794 (9th Cir. 2001) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999)). In evaluating whether an impairment is "substantially limiting," the Court should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *See* 29 C.F.R. § 1630.2(j).

In order to conduct this inquiry, however, the Court needs more information about Plaintiff's shoulder injury. Plaintiff's allegations in her complaint are limited. She alleges that she had a torn rotator cuff in Spring 2013, with surgery scheduled for early May 2013. *See* FAC ¶¶ 17, 19, 21. She alleges that due to this injury she was limited in her ability to concentrate, lift, push, and pull, and required one shift off from work a week before surgery. *Id.* ¶¶ 20, 26. This does not sufficiently indicate the severity or duration of her injuries. Temporary injuries such as broken or fractured bones "do not generally qualify as a disability within the meaning of the

6

ADA." *Smith v. Reg'l Plan Ass'n, Inc.*, No. 10 CIV. 5857 BSJ KNF, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011) (finding fractured ankle did not constitute qualifying disability); *see also Gray v. Keystone Steel & Wire Co.*, No. 08-1197, 2010 WL 1849803, at *4 (C.D. Ill. May 7, 2010) (finding torn rotator cuff did not constitute qualifying disability where plaintiff did not have any permanent limitations after surgery). In her opposition, Plaintiff suggests that her injury is "chronic" as she needed "extensive post surgery therapy" and "continue[s] to suffer limitations." Dkt. No. 20 at 4–5. In ruling on a motion to dismiss, however, the Court "may not consider any material beyond the pleadings . . . ." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

The Court accordingly GRANTS the Port's motion to dismiss these claims. For Plaintiff's ADA claims to survive, she must allege facts that describe how and to what extent she is disabled under the ADA.

## IV. CONCLUSION

The City's motion to dismiss is GRANTED. The Port's motion to dismiss is GRANTED IN PART as to Plaintiff's ADA claims but is otherwise denied in its entirety.

Despite the complaint's deficiencies identified above, the Court cannot say at this stage that amending the complaint would be futile. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("[A] pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."). Plaintiff may still be able to allege sufficient facts to state a claim under the ADA. *Lopez*, 203 F.3d at 1130. Plaintiff shall file an amended complaint by no later than July 31, 2017. In the amended complaint, Plaintiff should clearly detail the nature, duration, and long term effects of her impairment. Failure to file an amended complaint by this deadline may result in the dismissal of the action in its entirety without further leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

**IT IS SO ORDERED.**

Dated: 7/3/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge